Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| ELIZABETH SANTIAGO CRUZ, JOSÉ RAÚL GONZÁLEZ SANTIAGO, SAÚL GONZÁLEZ SANTIAGO, LIZBETH GONZÁLEZ SANTIAGO<br><br>*Demandantes-Recurridos*<br><br>v.<br><br>HOSPITAL GENERAL MENONITA DE COMERÍO; DR. LUIS C. SANTAELLA MARRERO, SU ESPOSA FULANA DE TAL Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS; DOCTOR´S CENTER HOSPITAL BAYAMÓN; DR. SULEIMAN HALAIBEH CHELBY, SU ESPOSA FULANA DE TAL Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS; DR. VÍCTOR GONZÁLEZ DURÓN, SU ESPOSA FULANA DE TAL Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS; **DRA. CARMEN COLÓN ZAYAS**, SU ESPOSO FULANO DE TAL Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS; COMPAÑÍAS ASEGURADORAS X, Y, Z; FULANO Y ZUTANO DE TAL<br><br>*Demandados*<br><br>**DRA. CARMEN COLÓN ZAYAS**<br><br>*Peticionaria* | KLCE202301230 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Comerío<br><br>Civil Núm.: CR2019CV00028 (Salón 001)<br><br>Sobre: Impericia Médica |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 23 de enero de 2024.

Comparece ante nos la Dra. Carmen Colón Zayas (Dra. Colón Zayas o peticionaria) mediante recurso de *Certiorari* y solicita la revisión de la *Resolución* emitida el 11 de octubre de 2023, notificada el 12 de octubre de 2023, por el Tribunal de Primera Instancia, Sala Superior de Comerío (TPI o foro primario). Mediante el aludido dictamen, el foro primario declaró No Ha Lugar la *Moción de Sentencia Sumaria* presentada por la Dra. Colón Zayas.

Por los fundamentos que expondremos a continuación, **denegamos** la expedición del auto de *certiorari.*

## I.

Según surge del expediente ante nos, el 1 de febrero de 2019, la señora Elizabeth Santiago Cruz, el señor José Raúl González Santiago, el señor Saúl González Santiago y la señora Lizbeth González Santiago (en conjunto, recurridos) presentaron *Demanda*[1] sobre daños y perjuicios contra el Hospital General Menonita de Comerío; el Dr. Luis C. Santaella Marrero, su esposa y la Sociedad Legal de Gananciales compuesta por ambos; Doctor's Center Hospital Bayamón; el Dr. Suleiman Halaibeh Chelby, su esposa Fulana de Tal y la Sociedad Legal de Gananciales compuesta por ambos; el Dr. Víctor González Durón, su esposa Fulana de Tal y la Sociedad Legal de Gananciales compuesta por ambos; la Dra. Colón Zayas, su esposo Fulano de Tal y la Sociedad Legal de Gananciales compuesta por ambos; Compañías Aseguradoras X, Y, Z; Fulano y Zutano de Tal.

En esencia, los recurridos alegaron en la demanda que el 5 de febrero de 2018, a eso de la 1:05 de la madrugada, el señor Raúl González Reyes (señor González Reyes) acudió junto a su esposa, la señora Elizabeth Santiago Cruz, a la sala de emergencias del Hospital Menonita de Comerío. Señalaron que la queja principal

---

[1] Apéndice del recurso de *Certiorari,* pág. 12-19.

documentada fue que el señor González Reyes refería que "había tomado un montón de medicamentos a las 7:00 de la noche el 4 de febrero de 2018"[2]. A la 1:10 de la madrugada fue evaluado por el médico de sala de emergencias, quien documentó que el señor González Reyes llegó consciente y ambulando. No obstante, arguyeron que el señor González Reyes no recibió el tratamiento requerido para su intoxicación, dolor de pecho y fallo respiratorio.

En cuanto a la Dra. Colón Zayas, los recurridos señalaron que ella fue quien "cambió el antibiótico nefrotóxico, ordenó los vasopresores y mantuvo la infusión de gluconato de calcio que para ese entonces no había sido efectiva en revertir los efectos tóxicos del Calan®"[3]. Además, adujeron que la Dra. Colón Zayas "[d]ebió entubar al paciente, colocar un marcapasos, llamar al cardiólogo e ingresar al Sr. González en ICU, sin embargo, se marchó del lecho de enfermedad del paciente sin un plan de manejo agresivo y consistente de ICU"[4]. Los recurridos sostuvieron que el señor González Reyes falleció debido a las actuaciones negligentes del personal médico. Por tanto, reclamaron compensación por concepto de daños emocionales, costas, gastos y honorarios de abogados.

El 4 de junio de 2019, luego de una prórroga, la Dra. Colón Zayas, presentó *Contestación a la Demanda*[5] en la que negó la mayoría de las alegaciones en su contra. Entre sus defensas afirmativas, la Dra. Colón Zayas alegó que los daños sufridos por el señor González Reyes fueron consecuencia de sus propios actos y/o de terceras personas, por los cuales no está obligada a responder. Además, arguyó que le cobija la presunción de que el tratamiento y/o atención médica que brindó en el desempeño de su deber

---

[2] Apéndice del recurso de *Certiorari*, pág. 14.
[3] Apéndice del recurso de *Certiorari*, pág. 18.
[4] *Íd.*
[5] Apéndice del recurso de *Certiorari*, págs. 23-30.

cumplió con los requisitos que se exigen en la mejor práctica de la medicina.

Posteriormente, el 12 de septiembre de 2023, la Dra. Colón Zayas compareció mediante *Moción de Sentencia Sumaria*[6]. En esencia, alegó que la muerte del señor González Reyes se debió a los daños provocados por el propio causahabiente mediante el acto de suicidio, por lo que la causa de acción presentada por los recurridos, al amparo del Artículo 1802 del Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 5141, no es transferible a terceros o herederos.

El 20 de septiembre de 2023, los recurridos presentaron *Moción en Oposición a Solicitud de Sentencia Sumaria*[7]. Reiteraron que las acciones y omisiones de los médicos demandados se distanciaron sustancialmente de la mejor práctica de la medicina, constituyendo el nexo causal del fallecimiento del señor González Reyes. Por tanto, solicitaron al foro primario que declarara No Ha Lugar la solicitud de sentencia sumaria presentada por la Dra. Colón Zayas.

Así las cosas, el 11 de octubre de 2023, notificada el 12 de octubre de 2023, el TPI emitió *Resolución*[8] en la que declaró No Ha Lugar la *Moción de Sentencia Sumaria* presentada por la Dra. Colón Zayas. Particularmente, el foro primario concluyó lo siguiente:

> [...] En la demanda se alega que la causa próxima de la muerte del Sr. Raúl González lo fue la negligencia médica por no prestar el tratamiento adecuado que hubiera prevenido la muerte. Existe un informe pericial que fue descubierto a las partes. Independiente de la caracterización de la causa que llevó al Sr González a recibir atención médica, ingesta de medicamentos o intento de suicidio, lo que se alega es que no recibió el tratamiento adecuado y que esta fue la causa próxima de su muerte. Esa es precisamente la controversia, si se trata de acciones que provocó el demandante la causa próxima de la muerte o si la misma lo es la alegada mala pr[á]ctica médica en atender su situación.
>
> Conforme a los argumentos presentados por las partes en relación a la solicitud de sentencia sumaria presentada, el

---

[6] Apéndice del recurso de *Certiorari*, págs. 31-35.
[7] Apéndice del recurso de *Certiorari*, págs. 36-48. Cabe señalar que la *Moción en Oposición a Solicitud de Sentencia Sumaria* fue acompañada de un informe médico pericial que no corresponde al señor González Reyes.
[8] Apéndice del recurso de *Certiorari*, págs. 1-11.

tribunal determina que existe controversia sobre hechos esenciales y materiales pertinentes a estas reclamaciones. [...][9]

Inconforme, el 6 de noviembre de 2023, la Dra. Colón Zayas presentó ante nos el recurso de epígrafe y señaló al TPI la comisión del siguiente error:

Erró el TPI al declarar No Ha Lugar la Moción de Sentencia Sumaria presentada en el caso de epígrafe.

El 13 de noviembre de 2023, el Dr. Víctor H. Hernández Durón presentó *Moción Uniéndonos a Solicitud de Certiorari*. El 16 de noviembre de 2023, la parte recurrida presentó *Oposición a Solicitud de Certiorari*. Con el beneficio de la comparecencia de las partes, procedemos a resolver la controversia ante nuestra consideración.

**II.**

**-A-**

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior[10]. La determinación de expedir o denegar este tipo de recursos se encuentra enmarcada dentro de la discreción judicial[11]. De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera"[12]. Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho"[13].

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones

---

[9] Apéndice del recurso de *Certiorari*, págs. 10.
[10] Véase *Torres González v Zaragoza Meléndez*, 2023 TSPR 46, 211 DPR ___ (2023); *800 Ponce de León v. AIG*, 205 DPR 163, 174 (2020); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *García v. Padró*, 165 DPR 324, 334-335 (2005); *Negrón v. Srio. de Justicia*, 154 DPR 79, 90-92 (2001).
[11] *Íd.*
[12] *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 729 (2014); *Negrón v. Srio. De Justicia, supra*, pág. 91.
[13] *Íd.*

contenidas en la Regla 52.1 de Procedimiento Civil[14]. La mencionada Regla dispone que solo se expedirá un recurso de *certiorari* cuando "se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo"[15]. Asimismo, y a manera de excepción, se podrá expedir este auto discrecional en las siguientes instancias:

> [C]uando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia[16].

En consecuencia, las determinaciones que cumplan con la Regla 52.1 de las de Procedimiento Civil, *supra*, pueden ser objeto de revisión y el tribunal apelativo ejercerá su discreción para decidir si expide o no el recurso de *certiorari*. Los criterios que este Tribunal de Apelaciones examina para ejercer su discreción se encuentran recogidos en la Regla 40 de nuestro Reglamento, 4 LPRA XXII-B, R. 40. Esta norma procesal dispone lo siguiente:

> El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

---

[14] 32 LPRA Ap. V, R. 52.1.
[15] *Íd.*
[16] *Íd.*

Por lo tanto, para ejercer debidamente nuestra facultad revisora es menester evaluar si, a la luz de los criterios antes enumerados, se justifica nuestra intervención, pues distinto al recurso de apelación, este tribunal posee discreción para expedir el auto de *certiorari*[17]. Por supuesto, esta discreción no opera en el vacío y en ausencia de parámetros que la dirijan[18]. Precisa recordar que la discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera[19]".

**-B-**

El Tribunal Supremo de Puerto Rico ha expresado en varias ocasiones que la sentencia sumaria es un remedio extraordinario y discrecional que sólo se debe conceder cuando no existe una controversia genuina de hechos materiales y lo que resta es aplicar el derecho[20]. En términos generales, al dictar sentencia sumaria el tribunal deberá hacer lo siguiente:

> (1) analizar los documentos que acompañan la solicitud de sentencia sumaria y los que se incluyen con la moción en oposición, así como aquellos que obren en el expediente del tribunal;
>
> (2) determinar si el oponente de la moción controvirtió algún hecho material y esencial, o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos[21].

Analizados estos criterios, el tribunal no dictará sentencia sumaria cuando existan hechos materiales y esenciales controvertidos; cuando haya alegaciones afirmativas en la demanda que no han sido refutadas; cuando surja de los propios documentos que acompañan la moción una controversia real sobre algún hecho material y esencial, o cuando como cuestión de derecho, no

---

[17] *Feliberty v. Soc. de Gananciales*, 147 DPR 834, 837 (1999).
[18] *I.G. Builders et al. v. BBVAPR*, *supra*; *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580 (2011).
[19] *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434-435 (2013).
[20] *Maldonado v. Cruz.*, 161 DPR 1, 39 (2004).
[21] *Vera v. Dr. Bravo*, 161 DPR 308, 334 (2004).

procede[22]. La sentencia sumaria se puede dictar a favor o en contra de la parte que la solicita, según proceda en Derecho[23].

Por tratarse de un remedio discrecional, el uso del mecanismo de sentencia sumaria tiene que ser mesurado y solo procederá cuando el tribunal quede claramente convencido de que tiene ante sí documentos no controvertidos[24]. Es importante mencionar, que este Tribunal utilizará los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una moción de sentencia sumaria[25].

Los criterios que este foro intermedio debe tener presentes al atender la revisión de una sentencia sumaria son los siguientes:

1) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra,* y la jurisprudencia le exigen al foro primario;

2) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*;

3) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos;

4) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia[26].

Además, al revisar la determinación del TPI respecto a una sentencia sumaria, estamos limitados de dos maneras; (1) solo podemos considerar los documentos que se presentaron ante el foro de primera instancia, (2) solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta[27]. El primer punto se enfoca en que las partes que recurren a un foro apelativo no pueden litigar

---

[22] *Íd.*, págs. 333-334.
[23] *Maldonado v. Cruz, supra.*
[24] *Íd.*, pág. 334.
[25] *Íd.*
[26] *Roldan Flores v. M Cuebas,* 199 DPR 664, 679 (2018).
[27] *Meléndez González, et al. v. M. Cuebas,* 193 DPR 100 (2015).

asuntos que no fueron traídos a la atención del foro de instancia. Mientras que el segundo limita la facultad del foro apelativo a revisar si en el caso ante su consideración existen controversias reales en cuanto a los hechos materiales, pero no puede adjudicarlos[28]. También, se ha aclarado que al foro apelativo le es vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia[29].

**-C-**

En nuestro ordenamiento jurídico "las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia"[30]. A tenor, las obligaciones que nacen de la culpa o negligencia se rigen por lo establecido en el Artículo 1802 del Código Civil de Puerto Rico de 1930[31]. Dicho artículo señala que, "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización"[32].

El propósito del referido artículo es ofrecerle una compensación a la persona que sufra daños y lesiones provocadas por los actos u omisiones ilícitas en que intervenga cualquier género de culpa o negligencia de otra persona[33]. Ahora bien, para que prospere esta acción civil es necesario que la parte demandante demuestre, mediante preponderancia de la prueba, (1) que ha

---

[28] *Íd.*, pág. 115.
[29] *Vera v. Dr. Bravo, supra*, 335.
[30] Art. 1042 del Código Civil de Puerto Rico, 31 LPRA ant. sec. 2992. El referido Código Civil de Puerto Rico de 1930, 31 LPRA ant. sec. 1 *et seq.*, fue derogado por el Código Civil de Puerto Rico de 2020, 31 LPRA sec. 5311 *et seq.*, aprobado mediante la Ley Núm. 55 de 1 de junio de 2020, según enmendada, con vigencia desde el 28 de noviembre de 2020. Sin embargo, para propósitos de la adjudicación de este recurso, citamos el Código Civil derogado debido a que los hechos en controversia surgieron durante su vigencia.
[31] Art. 1802 del Código Civil, 31 LPRA ant. sec. 5141.
[32] *Íd.*
[33] H. M. Brau del Toro, *Daños y Perjuicios Extracontractuales en Puerto Rico,* Segunda Edición, Publicaciones JTS, San Juan, Puerto Rico, 1986, pág. 4.

habido un acto u omisión culposa o negligente; (2) que hay una relación causal entre el acto y el daño sufrido; y (3) que se ha causado un daño real al reclamante[34].

Nuestro Tribunal Supremo ha definido la culpa o negligencia, como la falta del debido cuidado que consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto que una persona prudente y precavida habría de prever en las mismas circunstancias[35]. Así pues, la figura de previsibilidad es un elemento esencial de la responsabilidad por culpa o negligencia[36]. Según el Máximo Foro, la previsibilidad "[no se extiende a todo peligro imaginable que concebiblemente pueda amenazar la seguridad sino a aquél que llevaría a una persona prudente a anticiparlo"[37].

Nuestro ordenamiento jurídico dispone que la previsibilidad está atada al concepto de causalidad[38]. Dicho concepto es conocido como la doctrina de causalidad adecuada y conforme a la jurisprudencia, este dispone que, "no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general"[39]. A tales efectos, la figura de causalidad adecuada es un componente imprescindible en una reclamación en daños y perjuicios, ya que "es un elemento del acto ilícito que vincula al daño directamente con el hecho antijurídico"[40].

Cónsono con lo anterior, en nuestra jurisdicción, la figura de negligencia no se presume y quien la alega debe probarla[41]. No obstante, en los casos de daños y perjuicios, la referida figura no se

---

[34] *Toro Aponte v. E.L.A.*, 142 DPR 464 (1997).
[35] *Valle v. ELA*, 157 DPR 1, 18 (2002).
[36] *SLG Colon-Rivas v. ELA*, 196 DPR 855, 864 (2016).
[37] *Íd.*
[38] *Rivera v. S.L.G. Díaz*, 165 DPR 408, 422 (2005).
[39] *Sociedad de Gananciales v. Jerónimo Corp.*, 103 DPR 127, 134 (1974).
[40] *Rivera v. S.L.G. Díaz, supra.*
[41] *Vaquería Garrochales, Inc. v. A.P.P.R.,* 106 DPR 799, 803 (1978).

tiene que probar mediante prueba directa y se puede probar mediante prueba circunstancial[42].

## III.

En el presente caso, la Dra. Colón Zayas señala que erró el TPI al declarar No Ha Lugar su *Moción de Sentencia Sumaria* presentada el 12 de septiembre de 2023. En síntesis, alega que la causa de la muerte del señor González Reyes fue el suicidio, por lo que no procede la causa de acción instada por los recurrentes al amparo del Artículo 1802 del Código Civil de Puerto Rico de 1930, *supra*.

Por su parte, los recurridos alegan que la causa próxima de la muerte del señor González Reyes fue la negligencia médica de la Dra. Colón Zayas al no cumplir con su deber jurídico de prestar un tratamiento médico adecuado y así evitar la muerte.

De la *Resolución* recurrida surge que el TPI declaró No Ha Lugar la *Moción de Sentencia Sumaria* presentada por la Dra. Colón Zayas. Particularmente, el foro primario determinó que no existía controversia sobre el siguiente hecho material:

> 1. No está en controversia que el Sr. Raúl González recibió atención m[é]dica en las instituciones y por los médicos demandados.[43]

Por otro lado, el foro recurrido indicó que existía controversia sobre el siguiente hecho material:

> 1. Existiendo un deber jurídico de prestar tratamiento médico de conformidad con la mejor práctica de la medicina, si este fue incumplido por los demandados. Si se configura la causa de acción en todos sus elementos, incluyendo las angustias y sufrimientos mentales del Sr. Raúl González.[44]

Como puede colegirse, la peticionaria recurre de la denegatoria de una moción de carácter dispositivo, la cual es revisable, por vía de excepción, según lo dispuesto por la Regla 52.1 de Procedimiento Civil, *supra*. No obstante, tras examinar el asunto

---

[42] *Colón y Otros v. K-Mart y Otros,* 154 DPR 510, 522 (2001).
[43] Apéndice del recurso de *Certiorari,* pág. 9.
[44] *Íd.*

que se nos plantea a la luz de los criterios de la Regla 40 de nuestro Reglamento, *supra,* no identificamos razón alguna para intervenir.

Ante los hechos que presenta este caso, no consideramos que el foro primario haya actuado de forma arbitraria, prejuiciada o parcializada, ni que incurriera en un craso abuso de discreción o que se equivocara en la aplicación de la norma jurídica. La peticionaria tampoco constató que abstenernos de interferir con el dictamen del foro primario constituiría un fracaso irremediable de la justicia, de manera que estemos llamados a ejercer nuestra función revisora[45]. Por tanto, resolvemos que no se requiere nuestra intervención en esta etapa de los procedimientos.

**IV.**

Por los fundamentos antes expuestos, **denegamos** la expedición del auto de *certiorari.*

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

[45] Regla 40 del Reglamento del Tribunal de Apelaciones, *supra.*