Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| DAISY RIVERA RODRÍGUEZ <br><br> Apelante <br><br> V. <br><br> JC PENNEY PUERTO RICO, INC.; AIG INSURANCE COMPANY; ASEGURADORA A; ASEGURADORA B; DUEÑO I; DUEÑO II; JOHN DOE Y JANE DOE <br><br> Apelados | KLAN202400334 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas <br><br> Caso Núm.: CG2021CV01489 <br><br> Sobre: Daños y Perjuicios |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 28 de mayo de 2024.

El 8 de abril de 2024, compareció ante este Tribunal de Apelaciones la señora Daisy Rivera Rodríguez (en adelante, señora Rivera Rodríguez o parte apelante), mediante *Apelación.* Por medio de esta, nos solicita que, revisemos la *Sentencia en Reconsideración* emitida el 28 de agosto de 2023 y notificada el 5 de septiembre de 2023, por el Tribunal de Primera Instancia, Sala Superior de Caguas. En virtud del aludido dictamen, el foro *a quo* declaró Con Lugar la *Solicitud de Reconsideración* presentada por AIG Insurance Company-Puerto Rico (en adelante, AIG o parte apelada). En consecuencia, dictó sentencia sumaria según solicitado y ordenó el archivo con perjuicio de la causa de acción instada por la parte apelante.

Por los fundamentos que adelante se esbozan, se confirma el dictamen apelado.

Número Identificador

SEN2024 _____

**I**

Los hechos que suscitaron la controversia de epígrafe se remontan a una *Demanda* instada el 22 de junio de 2021, por la señora Rivera Rodríguez en contra de JC Penney Puerto Rico (en adelante JC Penney) y AIG. En apretada síntesis, la señora Rivera Rodríguez alegó que, el día 2 de julio de 2020, sufrió una caída en las inmediaciones de la tienda JC Penney, que le provocaron lesiones físicas consistentes en trauma en el antebrazo derecho, trauma en la rodilla derecha y ruptura de un menisco, para lo cual tuvo que ser operada el 7 de octubre de 2020. Añadió que tuvo que visitar la Sala de Emergencia, donde le administraron medicamentos para el dolor. Añadió que, estuvo convaleciendo y recibió terapia física hasta el día 17 de diciembre de 2020, cuando fue dada de alta.

En su *Demanda* negó haber incurrido en negligencia y alegó que la caída se debió a la negligencia de JC Penney, al no tomar las medidas de seguridad y precauciones necesarias y prudentes para evitar el accidente descrito. Acotó que, JC Penney tiene el deber de mantener el área donde aconteció el accidente con adecuada protección y buen mantenimiento para los ciudadanos, sin que se les cree riesgos para su seguridad y mucho menos, tener obstáculos en las áreas donde transitan sus clientes, quienes confían en que su espacio para transitar es seguro mientras observan la mercancía, como le ocurrió a la parte apelante.

La señora Rivera Rodríguez reclamó la suma de trescientos cincuenta dólares ($350.00) por concepto de gastos de viaje, estacionamiento y peaje; cincuenta mil dólares ($50,000.00) por daños físicos presentes y cincuenta mil dólares ($50,000.00) por angustias mentales, para una suma total de cien mil trescientos cincuenta dólares ($100,350.00).

En atención a una solicitud de paralización de los procedimientos por razón de JC Penney haberse acogido a quiebra,

el 21 de julio de 2021, el foro primario decretó la paralización de los procedimientos en cuanto a JC Penney y se reservó la jurisdicción para decretar la reapertura de los procedimientos en cualquier momento.

AIG Insurance Company-Puerto Rico presentó *Contestación a Demanda* el 25 de agosto de 2021. En esencia, AIG admitió la ocurrencia de la caída de la señora Rivera Rodríguez. No obstante, alegó afirmativamente que la aludida caída se debió a la propia negligencia de esta última y/o que asumió el riesgo al no fijarse por donde caminaba. El 29 de octubre de 2021 la señora Rivera Rodríguez y AIG presentaron el Informe para el manejo del caso.

Concluido el descubrimiento de prueba, el 2 de septiembre de 2022, AIG incoó *Solicitud de Sentencia Sumaria*, a la que anejó dos fotografías del lugar de la alegada caída y determinadas porciones de la transcripción de la deposición tomada a la señora Rivera Rodríguez el 1ro de junio de 2022. AIG argumentó en su moción dispositiva que, el objeto con el cual tropezó la señora Rivera Rodríguez era grande y visible para cualquier persona prudente y razonable. Añadió que, ante la admisión de la señora Rivera Rodríguez de que no estaba mirando en la dirección en la cual estaba caminando, procedía la desestimación sumaria conforme a lo resuelto por nuestro Tribunal Supremo en el caso *Torres v. Municipio de Mayagüez*, 111 DPR 158, 163 (1981).

El 11 de octubre de 2022, la señora Rivera Rodríguez interpuso *Oposición a Sentencia Sumaria*. En su escrito arguyó que JC Penney desatendió y/o abandonó el "z-car" con el cual tropezó y que ello creó una condición peligrosa dentro del establecimiento comercial. La parte apelante admitió 10 de los 15 hechos propuestos como incontrovertidos por AIG y los restantes 5, los negó en la forma en que estaban redactados.

El 20 de julio de 2023 el foro *a quo* emitió *Resolución* en la cual declaró No Ha Lugar la moción de sentencia sumaria presentada por AIG, en la que eminentemente determinó que existía controversia en torno a: cómo ocurrió la caída y la causa de esta, el procedimiento seguido por JC Penney para atender el incidente, las gestiones realizadas por AIG para atender la reclamación; la responsabilidad de JC Penney al dejar el referido carro en el pasillo, si la condición médica alegada es consecuencia de la caída y en qué consistían los daños reclamados por la señora Rivera Rodríguez.

En desacuerdo, el 4 de agosto de 2023, AIG presentó *Solicitud de Reconsideración.* No surge del expediente ante nuestra consideración que la parte apelante se haya opuesto a la moción de reconsideración interpuesta por AIG.

El 28 de agosto de 2023, el foro de primera instancia emitió la *Sentencia en Reconsideración* cuya revisión nos ocupa. En esta, consignó los siguientes hechos respecto a los cuales concluyó que no existe controversia de hechos materiales, a saber:

1. El 21 de julio de 2020, a eso de la 1:30 p.m., Rivera sufrió una caída en la tienda JC Penney en Plaza Centro Mall en Caguas.

2. Rivera tropezó con un *"z-car"* lleno de mercancía que se encontraba en el pasillo.

3. Las fotos reflejan que el *"z-car"* era color amarillo, grande en tamaño y que tenía colgadas piezas de ropa de múltiples colores.

4. Rivera cayó al piso y se golpeó el antebrazo derecho y la rodilla izquierda.

5. El empleado José G. Ortiz ayudó a Rivera a levantarse.

6. Dicho empleado llenó el formulario de reclamación.

7. Rivera tomó fotos del *"z-car"* con su celular luego del incidente.

8. Las fotos tomadas por Rivera reflejan que, en el área al lado del *"z-car"*, había ropa exhibida en una mesa que tiene un letrero con un precio de $27.99.

9.  En la deposición que le tomaron a Rivera, ésta declaró que no vio el *"z-car"* y de que no se dio cuenta con qué tropezó.

10. Rivera admitió que no vio el *"z-car"* porque estaba mirando la ropa que estaba en la referida mesa de ropa.

11. Además, Rivera admitió conocer que el objetivo del *"z-car"* era para transportar ropa de un lugar a otro.

12. Rivera admitió que existían otras rutas para llegar del piso de alfombra al área del piso en losetas.

13. Rivera admitió no tener impedimento visual.

14. Rivera admitió que, al momento del incidente, llevaba unas piezas de ropa en sus manos, pero que no le obstaculizaban su campo visual.

Consecuentemente, la primera instancia judicial determinó que procedía dictar sentencia sumaria a favor de la parte apelada. Conforme a ello, declaró Con Lugar la *Solicitud de Reconsideración*, y ordenó el archivo con perjuicio de la causa de acción en cuestión.

Inconforme, el 27 de septiembre de 2023, la parte apelante presentó *Moción en Solicitud de Reconsideración de Sentencia*. A la misma se opuso AIG el 17 de octubre de 2023, mediante *Oposición a Moción de Reconsideración*. El 7 de marzo de 2024, notificada el 8 de marzo de 2024, el foro primario declaró No Ha Lugar la *Moción en Solicitud de Reconsideración de Sentencia*.

Insatisfecha con la determinación del Tribunal de Primera Instancia, la parte apelante acudió ante este Foro mediante *Apelación* y realizó los siguientes señalamientos de error:

A.  Erró el TPI al declarar Ha Lugar la Moción en Solicitud de Reconsideración de Sentencia de AIG, con la consecuencia de finiquitar el caso por sentencia sumaria, aun cuando existen hechos materiales en controversia que hacen necesaria la celebración de un juicio donde se aquilate la prueba sobre las circunstancias en las cuales ocurrió la caída y que además le permita al Tribunal adjudicar la credibilidad del testimonio sobre cómo sucedieron los eventos.

B.  Erró el TPI al interpretar el derecho aplicable a los casos de responsabilidad civil extracontractual del

establecimiento comercial en reclamaciones por daños y perjuicios ante condiciones que representan peligro para sus clientes.

El 7 de mayo de 2024, la parte apelada compareció mediante *Alegato en Oposición a Apelación.* Con el beneficio de la comparecencia de las partes, procedemos a resolver.

**II**

### A. Sentencia Sumaria

Como es sabido, en nuestro ordenamiento jurídico, el mecanismo de la sentencia sumaria está regido por la Regla 36 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 36, la cual desglosa los requisitos específicos con los que debe cumplir esta figura procesal. *Lugo Montalvo v. Sol Meliá Vacation,* 194 DPR 209, 224 (2015). La sentencia sumaria es un mecanismo procesal disponible en nuestro ordenamiento que nos permite resolver controversias sin que se requiera llegar a la etapa de juicio. *Birriel Colón v. Econo y Otros,* 2023 TSPR 120, 213 DPR ___ (2023); *González Meléndez v. Mun. San Juan,* 212 DPR 601, 610 (2023); *Segarra Rivera v. Int'l Shipping et al.,* 208 DPR 964, 979 (2022); *Ramos Pérez v. Univisión,* 178 DPR 200, 213 (2010).[1] Ante la ausencia de una controversia sustancial y real sobre hechos materiales, sólo resta aplicar el derecho pertinente a la controversia. *Velázquez Ortiz v. Gobierno Mun. De Humacao,* 197 DPR 656, 662 (2017); *Lugo Montalvo v. Sol Meliá Vacation,* supra, pág. 225. Cuando se habla de hechos materiales, nos referimos a aquellos que pueden determinar el resultado de la reclamación, de conformidad con el derecho sustantivo aplicable. *Segarra Rivera v. Int'l Shipping et al.,* supra, pág. 980; *Ramos Pérez v. Univisión,* supra. Así pues, el propósito de la sentencia sumaria es facilitar la pronta, justa y económica solución de los casos que no presenten controversias genuinas de

---

[1] Véase también, *SLG Fernández-Bernal v. RAD-MAN et al.,* 208 DPR 310, 334 (2021).

hechos materiales. *González Meléndez v. Mun. San Juan*, supra; *Segarra Rivera v. Int'l Shipping et al.*, supra, pág. 979; *SLG Fernández-Bernal v. RAD-MAN et al.*, supra, págs. 334-335; *Roldán Flores v. M. Cuebas, Inc.*, 199 DPR 664, 676 (2018); *Velázquez Ortiz v. Gobierno Mun. De Humacao*, supra, págs. 662-663.

La Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, detalla el procedimiento que deben seguir las partes al momento de solicitar que se dicte una sentencia sumaria a su favor. A esos efectos, establece que una solicitud al amparo de ésta deberá incluir: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido. 32 LPRA Ap. V, R. 36.3; *Pérez Vargas v. Office Depot*, 203 DPR 687, 698 (2019); *Rodríguez García v. UCA*, 200 DPR 929, 940-941 (2018).

Cumplidos dichos requisitos, procede dictar sentencia sumaria si, las alegaciones, deposiciones y admisiones ofrecidas, en unión a las declaraciones juradas y alguna otra evidencia admisible, acreditan la inexistencia de una controversia real y sustancial respecto a algún hecho esencial y material y, además, si el derecho aplicable así lo justifica. 32 LPRA Ap. V, R. 36.3(e); *Birriel Colón v. Econo y Otros*, supra; *González Meléndez v. Mun. San Juan*, supra,

págs. 610-611; *Segarra Rivera v. Int'l Shipping et al.*, supra, pág. 980; *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 430 (2013).

Por otro lado, la parte que se opone tiene el deber de hacer referencia a los párrafos enumerados por la parte promovente que entiende que están en controversia y para cada uno, detallar la evidencia admisible que sostiene su impugnación. 32 LPRA Ap. V, R. 36.3, *supra*; *Roldán Flores v. M. Cuebas, Inc.*, supra, págs. 676-677; *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 432. Es decir, el oponente debe controvertir la prueba presentada con evidencia sustancial y no puede simplemente descansar en sus alegaciones. *Birriel Colón v. Econo y Otros*, supra; *Roldán Flores v. M. Cuebas, Inc.*, supra. Las meras afirmaciones no bastan. *Ramos Pérez v. Univisión*, supra, págs. 215-216. "Como regla general, para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos, que pongan en controversia los hechos presentados por el promovente". *Ramos Pérez v. Univisión*, supra, pág. 215. (Cita omitida); *Roldán Flores v. M. Cuebas, Inc.*, supra, pág. 677.

La sentencia sumaria no procederá en las instancias que: 1) existan hechos materiales y esenciales controvertidos; 2) haya alegaciones afirmativas en la demanda que no han sido refutadas; 3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o 4) como cuestión de derecho, no proceda. *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981, 992 (2023); *SLG Fernández-Bernal v. RAD-MAN*, supra, págs. 335-336.

Al momento de revisar denegatorias o concesiones de una sentencia sumaria, los foros revisores nos encontramos en la misma posición del Tribunal de Primera Instancia, y debemos utilizar sus mismos criterios para evaluarlas. *Serrano Picón v. Multinational Life Ins.*, supra, pág. 993; *González Meléndez v. Mun. San Juan,* supra,

pág. 611; *Segarra Rivera v. Int'l Shipping et al.*, supra, pág. 981. Nuestro Máximo Foro ha sido claro en que, "[l]os tribunales apelativos estamos limitados a: (1) considerar los documentos que se presentaron ante el foro de primera instancia; (2) determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y (3) comprobar si el derecho se aplicó de forma correcta. *Birriel Colón v. Econo y Otros*, supra; *Segarra Rivera v. Int'l Shipping et al.*, supra.

De acuerdo a lo anterior, el foro apelativo está obligado a examinar *de novo* la totalidad de los documentos incluidos en el expediente de la forma más favorable al promovido. *Birriel Colón v. Econo y Otros*, supra; *Rosado Reyes v. Global Healthcare*, 205 DPR 796, 809 (2020).

Finalmente, la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4, establece que cuando en virtud de una moción se dicta una sentencia que no dispone de la totalidad del pleito, o cuando se deniega el remedio solicitado, el Tribunal tendrá la obligación de resolver formulando una determinación de los hechos controvertidos e incontrovertidos que sean esenciales y pertinentes. La mencionada Regla dispone:

> Si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, ni se concede todo el remedio solicitado o se deniega la misma, y es necesario celebrar juicio, **será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos**, y hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando los procedimientos ulteriores que sean justos en el pleito, incluso una vista evidenciaria limitada a los asuntos en controversia. Al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad.
>
> A base de las determinaciones realizadas en virtud de esta regla el tribunal dictará los correspondientes remedios, si alguno. (Énfasis nuestro.)

En atención a la citada Regla, nuestro Tribunal Supremo ha enfatizado que, ante una moción de sentencia sumaria, los tribunales tienen el deber de establecer los hechos incontrovertibles y los que sí lo están. Tales determinaciones de hechos controvertidos e incontrovertidos facilitan el desfile de prueba, pues los hechos incontrovertidos se dan por probados. Asimismo, colocan a los tribunales apelativos en posición de ejercer su facultad revisora. En *Ramos Pérez v. Univisión*, supra, pág. 221, interpretando nuestro cuerpo de Reglas de Procedimiento Civil, el Tribunal Supremo de Puerto Rico, expresó:

> [A]unque se deniegue la moción, el tribunal deberá establecer los hechos que resultaron incontrovertibles y aquellos que sí lo están. Regla 36.4 de Procedimiento Civil, *supra.* Para ello, podrán utilizar la enumeración que las partes le presentaron. Incluso, la Regla 36.3(b)(3) de Procedimiento Civil, *supra*, requiere que la parte promovida enumere los hechos que a su juicio no están en controversia. Además, los hechos debidamente enumerados e identificados con referencia a la prueba documental admisible presentados en el caso se darán por admitidos si no son debidamente controvertidos. Regla 36.3(d), *supra.* Todo esto simplificará el desfile de prueba en el juicio, ya que los hechos incontrovertidos se considerarán probados.

## B. Responsabilidad Civil Extracontractual

El Artículo 1536 de nuestro Código Civil, 31 LPRA §5311 *et seq.*, dispone que la persona que por culpa o negligencia cause daño a otra, viene obligado a repararlo. Para que prospere una reclamación por daños y perjuicios al amparo del referido precepto legal, se requiere la concurrencia de tres elementos, los cuales tienen que ser probados por la parte demandante: (1) el acto u omisión culposa o negligente; (2) la relación causal entre el acto u omisión culposa o negligente y el daño ocasionado; y (3) el daño real causado al reclamante. *Nieves Díaz v. González Massas*, 178 DPR 820 (2010).

El daño constituye el menoscabo material o moral que sufre una persona, ya sea en sus bienes vitales naturales, en su propiedad

o en su patrimonio, causado en contravención a una norma jurídica y por el cual ha de responder otra persona. En nuestro ordenamiento jurídico se reconoce la existencia de dos tipos de daños: los especiales, conocidos como daños físicos, patrimoniales, pecuniarios o económicos, y los generales, conocidos como daños morales. *Nieves Díaz v. González Massas*, supra.[2]

Atinente al caso que nos ocupa, nuestra última instancia judicial ha resuelto que existen actividades comerciales cuya naturaleza les imponen un deber de cuidado y protección para con sus clientes. En *Sociedad v. González Padín*, 117 DPR 94 (1986), nuestro Más Alto Foro estableció que el dueño de un establecimiento comercial abierto al público debe mantenerlo en condiciones de seguridad tales que las personas inducidas a penetrar en el mismo no sufran ningún daño. El incumplimiento de este deber por parte del propietario o sus empleados es fuente de responsabilidad extracontractual. Véase, *Colón v. Kmart*, 154 DPR 510 (2001); *J.A.D.M v. Centro Comercial Plaza Carolina*, 132 DPR 785 (1993). Dicha obligación implica que el dueño u operador tiene el deber de ejercer un cuidado razonable para mantener la seguridad de las áreas accesibles al público o cliente para que de ese modo se evite que sus clientes sufran de algún daño. *Sociedad v. González Padín, a la pág. 104; Colón v. Kmart* y otros, *supra*.

Por ejemplo, en casos criminales, nuestro Tribunal Supremo además ha expresado que lo determinante al momento de evaluar si un establecimiento comercial tiene el deber de ofrecer seguridad adecuada y razonable a sus clientes y visitantes, no es el tamaño ni

---

[2] Al revisar una sentencia del Tribunal de Primera Instancia que concede daños, los foros apelativos debemos considerar la prueba desfilada y concesiones otorgadas en casos similares resueltos anteriormente. A pesar de que se ha reconocido que cada caso es distinto y tiene circunstancias particulares, los precedentes son referencia útil para la determinación de si la compensación es exageradamente alta o ridículamente baja. *Rodríguez et al. v. Hospital, et al.*, 186 DPR 889, 929 (2012); *Sucn. Mena Pamias*, et als *v. Meléndez, et als*, 2023 TSPR 108, 212 DPR ____ (2023).

la clasificación del establecimiento. Lo preciso será analizar, la totalidad de las circunstancias del caso, en particular: (1) la naturaleza del establecimiento comercial y de las actividades que allí se llevan a cabo; (2) la naturaleza de la actividad criminal que se ha registrado y se está registrando en las facilidades y en el área donde está ubicado el establecimiento; y (3) las medidas de seguridad existentes en el mismo. *Santiago Colón v. Supermercado Grande*, 166 DPR 796, 813 (2006); *J.A.D.M. v. Centro Comercial Plaza Carolina*, supra. En reiteradas ocasiones, la Alta Curia ha aclarado que el dueño de un establecimiento comercial es responsable bajo el Art. 1802[3] del Código Civil cuando crea una condición peligrosa dentro del establecimiento, en el área designada para el flujo de clientes, si tal condición es causa eficiente y próxima del accidente que ocasiona los daños a la parte demandante.

Ahora bien, aunque los dueños de los establecimientos comerciales tienen un deber de mantener el local en condiciones de seguridad tales que sus parroquianos no sufran daños, los dueños no son aseguradores absolutos de los daños que sufran sus clientes en los predios del negocio. De este modo, se impondrá responsabilidad al dueño del establecimiento por daños sufridos por un patrocinador o visitante del negocio cuando la causa de los daños esté vinculada a condiciones peligrosas dentro del establecimiento, las cuales eran de conocimiento de los propietarios o su conocimiento era imputable a ellos. El demandante en este caso, tiene la carga de probar que el dueño no ejercitó el cuidado debido. Véase, *Colón v. Plaza Las Américas*, 136 DPR 235 (1994). En otras palabras y como anteriormente establecido, el dueño del establecimiento no es un asegurador de la seguridad de los clientes

---

[3] Nos remitimos al Artículo 1802 del Código Civil de 1930, por ser el aplicable al caso de marras. Dicho artículo fue enmendado por el Art. 1536 del Nuevo Código Civil de Puerto Rico que entró en vigencia el 28 de noviembre de 2020 a través de la Ley 55 del 1 de junio de 2020.

del negocio, y su deber sólo se extiende al ejercicio del cuidado razonable para su protección, y que el visitante tiene que probar que el dueño del establecimiento no ha ejercido el cuidado debido para que el local sea seguro para él. *Cotto v. C.M. Ins. Co.,* 116 DPR 644, 650 (1985).

Recapitulamos, como regla general, le corresponde a la parte actora en un caso de daños y perjuicios donde alegue haber sufrido daños como consecuencia de la negligencia de la parte demandada el peso de la prueba respecto a dicha alegada negligencia. *Vaquería Garrochales, Inc. v. A.P.P.R.,* 106 DPR 799 (1978); *Irizarry v. A.F.F.,* 93 DPR 416 (1966); *Morales Mejías v. Met. Pack. & Ware. Co.,* 86 DPR 3 (1962). En palabras más sencillas, la parte demandante tiene la obligación de poner al tribunal en condiciones de poder hacer una determinación clara y específica sobre negligencia mediante la presentación de prueba a esos efectos.

Referente a la situación específica de reclamaciones por caídas revela que se ha exigido de la parte demandante que pruebe, como parte esencial de la causa de acción que ejercita, la existencia de la condición de peligrosidad que ocasionó la caída. *Cotto v. C.M. Ins. Co., supra,* a la pág. 651.

Respecto al grado de cuidado y circunspección que debe observar la persona mientras camina, nuestra última instancia judicial ha señalado que: "[.....] si bien un peatón no está obligado a constantemente ir mirando hacia la superficie, ciertamente debe evitar el caminar ajeno a aquellas situaciones visibles a su perspectiva visual." *Torres v. Municipio de Mayagüez,* 111 DPR 158, 163 (1981).

Esbozada la normativa jurídica que enmarca la controversia de epígrafe, procedemos a aplicarla.

**III**

En su primer señalamiento de error, la parte apelante argumenta que, erró el TPI al declarar Ha Lugar la *Solicitud de Reconsideración* de AIG, con la consecuencia de finiquitar el caso por sentencia sumaria, aun cuando existen hechos materiales en controversia que hacen necesaria la celebración de un juicio donde se aquilate la prueba sobre las circunstancias en las cuales ocurrió la caída y que además le permita al Tribunal adjudicar la credibilidad del testimonio sobre cómo sucedieron los eventos.

Como cuestión de umbral, nos corresponde determinar si AIG al momento de solicitar que se dictara sentencia sumaria a su favor, cumplió con las disposiciones de la Regla 36.3 de Procedimiento Civil, *supra.*

Luego de examinada ponderadamente la aludida moción de sentencia sumaria, de la misma se desprende que, en efecto, la parte apelada cumplió con las exigencias del aludido precepto procesal, ello, toda vez que incluyó: (1) una exposición breve de las alegaciones de las partes; (2) los asuntos litigiosos o en controversia; (3) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal; (5) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable, y (6) el remedio que debe ser concedido.[4]

---

[4] 32 LPRA Ap. V, R. 36.3; *Pérez Vargas v. Office Depot, supra,* pág. 698; *Rodríguez García v. UCA,* supra, págs. 940-941.

Por otro lado, nos corresponde determinar en segunda instancia si, la parte apelante hizo lo propio, respecto al cumplimiento con la Regla 36.4 de Procedimiento Civil, *supra.* Veamos.

Al revisar el escrito intitulado *Oposición a Sentencia Sumaria* de la parte apelante, vemos que esta eminentemente hizo un recuento de las alegaciones contenidas en su *Demanda.* Como mencionamos previamente, admitió 10 de los 15 hechos propuestos como incontrovertidos por AIG. Los hechos números 7, 11, 12, 13 y 14 los negó en la forma en que estaban redactados sin que lograra controvertir los mismos, conforme lo ha establecido el marco doctrinario respecto a la Regla 36.3 de Procedimiento Civil, *supra.* Tal y como esbozamos previamente, la parte que se opone tiene el deber de hacer referencia a los párrafos enumerados por la parte promovente que entiende que están en controversia y para cada uno, detallar la evidencia admisible que sostiene su impugnación.[5] Es decir, el oponente debe controvertir la prueba presentada con evidencia sustancial y no puede simplemente descansar en sus alegaciones. *Birriel Colón v. Econo y Otros*, supra; *Roldán Flores v. M. Cuebas, Inc.*, supra. Las meras afirmaciones no bastan. *Ramos Pérez v. Univisión*, supra, págs. 215-216. "Como regla general, para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos, que pongan en controversia los hechos presentados por el promovente".[6]

En su segundo señalamiento de error, la parte apelante nos plantea que, erró el TPI al interpretar el derecho aplicable a los casos de responsabilidad civil extracontractual del establecimiento

---

[5] *Roldán Flores v. M. Cuebas, Inc.*, supra, págs. 676-677; *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 432.
[6] *Roldán Flores v. M. Cuebas, Inc.*, supra, pág. 677; *Ramos Pérez v. Univisión*, supra, pág. 215.

comercial en reclamaciones por daños y perjuicios ante condiciones que representan peligro para sus clientes.

Al analizar el planteamiento de la parte apelante, vemos que el mismo se circunscribe a atacar la interpretación que hizo el foro primario en cuanto a la doctrina prevaleciente sobre la responsabilidad de los centros comerciales, sin que lo anterior constituya una controversia real sobre hechos materiales capaz de derrotar una moción de sentencia sumaria.

Particularmente, en cuanto a la identificación de las controversias de hecho y de derecho, nuestra Máxima Curia ha llamado la atención a lo siguiente:

> Aunque a veces no es fácil atisbar la diferencia, es vital que los tribunales distingan puntualmente entre lo que es un hecho y una conclusión de derecho. Un "hecho" en el campo jurídico es un acontecimiento o un comportamiento determinado y pertinente para la norma legal que se pretende aplicar. La norma jurídica se aplica al supuesto que constituye el "hecho" para arribar a determinada conclusión de derecho.
>
> [. . .]
>
> En todo caso debidamente instado ante un foro judicial habrá siempre una controversia de derecho presente y es precisamente esa controversia la que vienen los tribunales llamados a resolver. Si se comete el error de catalogar las controversias de derecho como controversias de hecho se eliminaría virtualmente el mecanismo de sentencia sumaria de nuestro ordenamiento procesal, pues este requiere expresamente la inexistencia de una controversia de hechos materiales para que un tribunal pueda dictar sentencia de esa forma. *Lugo Montalvo v. Sol Meliá Vacation*, supra, págs. 226-227. *Roldán Flores v. M. Cuebas, Inc.*, supra.

En resumen, destacamos que, coincidimos con el razonamiento del foro *a quo*. Al examinar el expediente del caso ante nos y luego de un examen de *novo*, encontramos que las Determinaciones de Hechos realizadas por el foro primario se basan en los documentos que obran en el expediente y anejados a la *Solicitud de Sentencia Sumaria*, los cuales no fueron controvertidos por la parte apelante. Asimismo, coincidimos con la interpretación

y aplicación del derecho realizada por el foro primario en este caso. Ante ello, no vemos razón por la cual intervenir con el dictamen apelado.

Según es sabido, los tribunales apelativos "no debemos intervenir con las determinaciones de los juzgadores de primera instancia, salvo que medie pasión, prejuicio, parcialidad o error manifiesto". *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007); *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219, (2021); *Rodríguez et al. v. Hospital et al.*, supra, págs. 908-909; *Dávila Nieves v. Meléndez Marín*, 187 DPR 750 (2013); *Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 177 DPR 345, 356 (2009); *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 778 (2022).

## IV

Por los fundamentos que anteceden, se confirma el dictamen apelado.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones